# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JHENSY SAILLANT, | : | Civil No. 1:20-CV-00609 |
| Petitioner, | : | |
| v. | : | |
| ANGELA HOOVER, *et al.*, | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

This is a habeas corpus case under 28 U.S.C. § 2241 in which an immigration detainee seeks his release from custody based on the global COVID-19 pandemic. For the reasons that follow, the petition for writ of habeas corpus is denied to the extent that it seeks habeas corpus relief based on the pandemic.

### **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

COVID-19 is an infectious disease caused by a novel strain of coronavirus. *Coronavirus*, WORLD HEALTH ORGANIZATION, https://www.who.int/health-topics/coronavirus#tab=tab_1 (last visited Apr. 14, 2020). The first reported cases of COVID-19 occurred in late 2019 in Wuhan, China. *See Coronavirus Disease 2019: Situation Summary*, CENTERS FOR DISEASE CONTROL AND PREVENTION (updated Apr. 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html. Since that time, the coronavirus has grown exponentially and become a global pandemic, with 213 countries reporting confirmed cases of

the disease. *Coronavirus Disease (COVID-19) Pandemic*, WORLD HEALTH ORGANIZATION, https://www.who.int/emergencies/diseases/novel-coronavirus-2019 (last visited Apr. 16, 2020). At the time of this writing, there were 1,954,724 confirmed cases of COVID-19 around the world, including 126,140 confirmed deaths. *Id.* The United States has become a particular hot spot for the disease, with 604,070 confirmed cases, and 25,871 deaths as of the time of this writing. *Coronavirus (COVID-19) Dashboard*, WORLD HEALTH ORGANIZATION, https://covid19.who.int/ (last visited Apr. 16, 2020).

Although most people who become sick from COVID-19 develop only mild or moderate respiratory symptoms and recover with no medical intervention, a minority of cases lead to serious illness that can result in hospitalization or death. *Q&A on Coronavirus (COVID-19): What Are the Symptoms of Coronavirus*, WORLD HEALTH ORGANIZATION, https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (last visited Apr. 14, 2020). COVID-19 affects people of all demographics, but some populations—most notably elderly individuals and individuals with preexisting medical conditions—are more susceptible to developing serious cases of the disease than others. *Coronavirus Disease 2019 (COVID-19): Groups at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Apr. 14, 2020).

At the time of this writing, there is no vaccine for COVID-19, and no antiviral medications have proven effective in treating the disease. *Q&A on Coronavirus (COVID-19):Are There Any Medicines or Therapies that Can Prevent or Cure COVID-19?*, WORLD HEALTH ORGANIZATION, https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (last visited Apr. 14, 2020). In the absence of such solutions, governments have turned to non-medical interventions to try to slow the spread of the disease, including school closures, restrictions on businesses and large gatherings, stay-at-home orders, and "social distancing" policies. *See, e.g.*, *Social Distancing, Quarantine, and Isolation*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html. In line with those policies, the Commonwealth of Pennsylvania has issued a mandatory stay-at-home order for all individuals in the commonwealth and has closed all schools, among other measures to combat the disease. *See* Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home (Apr. 1, 2020), https://www.governor.pa.gov/wpcontent/uploads/2020/04/20200401-GOV-Statewide-Stay-at-Home-Order.pdf; *Governor Wolf Announces Closure of Pennsylvania Schools*, GOVERNOR TOM WOLF (Mar. 13, 2020), https://www.governor. pa.gov/newsroom/governor-wolf-announces-closure-of-pennsylvania-schools/.

It is against this backdrop that Petitioner Jhensy Saillant ("Saillant") seeks a writ of habeas corpus. Saillant is a native and citizen of Haiti who was admitted into the United States as a lawful permanent resident in 2011. (Doc. 1 at 2.) In 2015, the Department of Homeland Security initiated removal proceedings after he was convicted of a crime involving moral turpitude. (*Id.*; Doc. 3 at 13.)[1] Saillant is currently detained by United States Immigration and Customs Enforcement ("ICE") in the Clinton County Correctional Facility ("CCCF") pending his removal from the country. (Doc. 1 at 7, 17.)

Saillant filed a petition for writ of habeas corpus on April 13, 2020. (*Id.*) Saillant asserts that his continued detention is unconstitutional because CCCF has not implemented adequate policies to contain the spread of COVID-19 and because the physical space of CCCF is inadequate to contain the disease. (*Id.* at 7.) As a result, Saillant feels "like he is in death-row." (*Id.*) Saillant's petition alleges that CCCF has an insufficient number of medical personnel and that those personnel are not adequately trained to combat the disease. (Doc. 1 at 7.) He alleges that CCCF has not implemented proper preventive measures and that it is unable to do

---

[1] The parties offer differing accounts of the crime for which Saillant was convicted. (*See* Doc. 1 at 2; Doc. 3 at 3.) Given the expedited nature of the proceedings in this case, the parties' agreement that Saillant was convicted of a crime of moral turpitude, and the fact that Saillant's particular conviction is immaterial to his present claims, the court does not make a factual finding as to the specific nature of Saillant's conviction beyond the fact that it was classified as a crime involving moral turpitude.

so because CCCF has inadequate physical spaces. (*Id.*) Saillant alleges that he and the other individuals detained in CCCF are housed together in two-person cells, that they must eat meals in groups of 30 or more, and that they are housed in a small dormitory that houses 72 individuals. (*Id.* at 7–8.) Saillant further alleges that the communal spaces in CCCF are not regularly disinfected. (*Id.* at 9.) Saillant alleges that these circumstances increase his risk of contracting COVID-19. (*Id.* at 8–10.) Notably, Saillant does not allege that he has contracted COVID-19, he does not allege that he has experienced any symptoms consistent with COVID-19, he does not allege that he has any preexisting condition that makes him more vulnerable to COVID-19, and he does not allege that he has had contact with any individual who has COVID-19. (*See generally id.*)

    Because the court construed Saillant's petition as seeking emergency relief, the court immediately set an expedited briefing schedule upon receiving the petition, requiring the Respondents to file a response no later than 3:00 p.m. on the following day. (Doc. 2.) Respondents timely filed their response on April 14, 2020. (Doc. 3.) Respondents first argue that the court may not issue a writ of habeas corpus in this case because a challenge to a petitioner's conditions of confinement is not a cognizable claim in a habeas corpus proceeding. (*Id.* at 14–15.) Respondents then argue that, even if the habeas corpus claim is allowed to proceed, release from confinement is still not an appropriate remedy for Saillant's

claims. (*Id.* at 15–17.) Respondents further argue that Saillant's constitutional claims challenging his confinement fail on their merits. (*Id.* at 17–30.) Finally, Respondents argue that if release is granted, the court should impose conditions on Saillant's release. (*Id.* at 30–31.)

## STANDARD OF REVIEW

A United States district court may issue a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## ANGELA HOOVER IS THE ONLY PROPER RESPONDENT

Under 28 U.S.C. § 2243, a writ of habeas corpus must be directed to the petitioner's custodian. The warden of the prison where a petitioner is held is considered the petitioner's custodian for purposes of a habeas corpus action. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Accordingly, Respondent Angela Hoover, the warden of CCCF, is the only proper respondent to this action. Respondents Simona Flores, L. Francis Cissna, and William Barr are therefore dismissed from this action.

## DISCUSSION

### A. Saillant's Claims Are Cognizable in a Habeas Corpus Petition

The court will first address Respondents' argument that Saillant's claims should be dismissed for lack of jurisdiction because they are not cognizable in a

habeas corpus petition.  (Doc. 3 at 14–15.)  According to the Respondents, a habeas corpus petition may only challenge the validity or length of a petitioner's detention, while challenges to the conditions of a petitioner's confinement are properly brought as civil rights actions.  (*Id.*)

Although neither the Supreme Court nor the Third Circuit has precisely defined the circumstances in which a petitioner may challenge the conditions of his confinement through a petition for writ of habeas corpus, the Third Circuit has indicated that a challenge to the conditions of confinement is cognizable in a habeas corpus claim "in extreme cases."  *Ali v. Gibson*, 572 F.2d 971, 975 n.8 (3d Cir. 1978).

The court agrees with the conclusion of Chief United States District Judge Christopher C. Conner that a claim based on the COVID-19 pandemic is exactly the sort of "extreme case" contemplated in *Ali*.  *See Verma v. Doll*, No. 4:20-CV-00014, 2020 WL 1814149, at *4 (M.D. Pa. Apr. 9, 2020); *Camacho Lopez v. Lowe*, No. 3:20-CV-00563, 2020 WL 1689874, at *5–6 (M.D. Pa. Apr. 7, 2020).  Respondents acknowledge that Chief Judge Conner reached such a conclusion in *Camacho Lopez*, but argue that it would be error to apply the same reasoning to this case because Chief Judge Conner's reasoning was limited to the specific facts of *Camacho Lopez*, in which the petitioner sought habeas corpus relief after being diagnosed with COVID-19.  (Doc. 3 at 15 n.3.)  Respondents' argument is

undercut by Chief Judge Conner's subsequent decision in *Verma*, however, where the court concluded that the facts of that case—which, like the present case, also involved a petitioner who had not been diagnosed with COVID-19—also presented the kind of extreme case in which a habeas corpus petition could be used to challenge conditions of confinement.  *See Verma*, 2020 WL 1814149, at *4.  Accordingly, the court need not resolve the point at which a challenge to the conditions of a petitioner's confinement becomes cognizable in a habeas corpus petition, because this case presents the "extreme case" in which such a challenge is clearly cognizable.  *Ali*, 572 F.2d at 975 n.8; *Verma*, 2020 WL 1814149, at *4.

### B. Saillant Is Not Entitled to Habeas Corpus Relief

Because of the COVID-19 pandemic, courts around the country have confronted a growing number of cases like the present one in which an individual seeks release from incarceration based on the pandemic.  As a result, a body of case law has quickly developed in this district that provides guidance on when habeas corpus relief is warranted based on COVID-19 concerns.  The court turns its attention to those cases.

In *Thakker v. Doll*, __ F. Supp. 3d __, 1:20-CV-00480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020), United States District Judge John E. Jones, III considered a request for preliminary injunctive relief in a habeas corpus case brought by a number of immigration detainees with chronic medical conditions

that made them more susceptible to COVID-19.  *Id.* at *1.  Given the seriousness of the COVID-19 pandemic, the conditions in the facilities in which the petitioners were detained, and the petitioners' underlying health conditions, the court found that the petitioners would suffer irreparable harm if preliminary injunctive relief were not granted.  *Id.* at *3–7.  The court similarly concluded that petitioners had established a likelihood of success on the merits of their petitions and that the balance of equities and public interest favored preliminary injunctive relief.  *Id.* at *7–9.  Accordingly, the court granted the petitioners' motion for preliminary injunction.  *Id.* at *10; *see also Hope v. Doll*, No. 1:20-CV-00562 (M.D. Pa. Apr. 7, 2020) (granting habeas relief to a class of petitioners that was similarly situated to the class of petitioners in *Thakker* for substantially the same reasons as those expressed in *Thakker*).

Unlike the petitioners in *Thakker*—individuals who were at increased risk of contracting COVID-19 but did not have confirmed cases of the disease—the petitioner in *Camacho Lopez*, 2020 WL 1689874, was an immigration detainee who had a confirmed case of COVID-19.  *Id.* at *1.  The court in *Camacho Lopez* distinguished the case from *Thakker* on that basis.  *Id.* at *6.  Because the petitioner had already contracted COVID-19, the question of whether habeas corpus relief was warranted in *Camacho Lopez* was based on the medical treatment he was receiving for the disease, rather than on any preventive measures the

facility was taking to slow the spread of the disease. *Id.* at *7. Analyzing the case through that lens, the court concluded that preliminary injunctive relief was not warranted because the petitioner had received adequate medical care for his COVID-19 illness. *Id.* at *7–9.

Following *Thakker* and *Camacho Lopez*, United States District Judge Yvette Kane considered a habeas petition brought by an immigration detainee who had not been diagnosed with COVID-19, but had been assessed as possibly having anemia, which could potentially affect his immune system. *See Umarbaev v. Lowe*, 1:20-CV-00413, 2020 WL 1814157, at *5 (M.D. Pa. Apr. 9, 2020). The court found that the risk of contracting COVID-19 was not sufficient to grant habeas corpus relief and found that the petitioner was not otherwise entitled to relief when considering his specific medical needs, the respondent's response to those medical needs, and the respondent's response to the COVID-19 pandemic generally. *Id.* at *7.

On the same day that Judge Kane decided *Umarbaev*, Chief Judge Conner considered another habeas corpus claim based on the COVID-19 pandemic in *Verma*, 2020 WL 1814149. The petitioner in *Verma* was 67 years old and had a number of medical conditions that made him more vulnerable to COVID-19—including cardiovascular disease, pre-diabetes, high blood pressure, high cholesterol, and angina—but had not tested positive for COVID-19. *Id.* at *2. The

petitioner did not advance specific legal theories entitling him to habeas corpus relief and instead simply relied on the court's decision in *Thakker* to request relief. *Id.* at *3.  The court in *Verma* concluded that the petitioner was not entitled to habeas corpus relief because he had failed to make an individualized showing of facts that would justify such relief.  *Id.* at *5–7.

    Although there is no set formula for determining when habeas corpus relief is appropriate based on the risks from COVID-19, *Thakker*, *Camacho Lopez*, *Umarbaev*, and *Verma* provide a non-exhaustive list of factors that may be considered in such a case.  A court considering a habeas corpus petition based on the COVID-19 pandemic may consider (1) whether the petitioner has been diagnosed with COVID-19 or is experiencing symptoms consistent with the disease; (2) whether the petitioner is among the group of individuals that is at higher risk of contracting COVID-19; (3) whether the petitioner has been directly exposed to COVID-19; (4) the physical space in which the petitioner is detained, and how that physical space affects his risk of contracting COVID-19; (5) the efforts that the prison has made to prevent or mitigate the harm caused by COVID-19; and (6) any other relevant factors.  It is not enough for a petitioner to allege that he is detained and presented with a risk of contracting COVID-19 that is common to all prisoners. Rather, the petitioner must make an individualized showing that he is entitled to habeas corpus relief when considering the above

factors.  *See Verma*, 2020 WL 1814149, at *5–7.  As the Third Circuit has noted in the analogous context of motions for compassionate release under 18 U.S.C. § 3582, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  *United States v. Raia*, __ F.3d __, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

In this case, Saillant alleges that CCCF has failed to take adequate steps to prevent the spread of COVID-19 by not hiring a sufficient amount of medical staff, not sufficiently training its medical staff, not providing adequate physical space for detainees, and not regularly disinfecting communal spaces.  (Doc. 1 at 7–10.)  Saillant's allegations, however, are belied by the evidence Respondents have produced, which shows that CCCF is taking significant action to prevent the spread of COVID-19 in the facility.  According to a declaration from ICE Assistant Field Office Director Joshua Reid, detainees are screened for COVID-19 symptoms and for possible exposure to the disease.  (Doc. 3-1 ¶ 9.)  Detainees exhibiting symptoms of COVID-19 are placed in isolation for fourteen days, while those who were knowingly exposed to the disease are placed in cohorts with restricted movement for fourteen days and monitored for possible symptoms.  (*Id.* ¶¶ 10–11.)  CCCF has onsite medical staff available twenty-four hours a day, seven days a week.  (*Id.* ¶ 12.)  CCCF has also implemented additional cleaning and sanitizing

measures to try to prevent the spread of COVID-19. (*Id.* ¶ 13.) Additionally, CCCF has begun screening all staff, vendors, and detainees for the disease before they enter the facility and has placed limits on visitation. (*Id.* ¶¶ 14–16.) CCCF has also implemented educational measures to improve personal hygiene habits among staff and detainees. (*Id.* ¶ 17.) Finally, CCCF has designated specific areas of the facility for the quarantine of those suspected to have COVID-19. (*Id.* ¶ 18.) Given these preventive measures, the court finds that CCCF has adequately addressed Saillant's concerns regarding CCCF's efforts to prevent the spread of COVID-19.

Because the court finds that CCCF has adequately addressed Saillant's concerns regarding CCCF's preventive measures, the court finds that Saillant is not entitled to habeas corpus relief because he has not otherwise made an individualized showing that he is entitled to such relief. *See Verma*, 2020 WL 1814149, at *5–7. Saillant does not allege that he is elderly, he does not allege that he has a serious medical condition that renders him more susceptible to COVID-19, he does not allege that he has been diagnosed with COVID-19, he does not allege that he has any symptoms of the disease, and he does not allege that he has been directly exposed to the disease. Absent any of those allegations, his claim amounts to an argument that he is entitled to a writ of habeas corpus because he is detained and subjected to a generalized risk of contracting COVID-19. Such a

claim, however, is insufficient to establish entitlement to a writ of habeas corpus. *See Verma*, 2020 WL 1814149, at *5–7 (requiring a particularized showing of the grounds for habeas corpus relief); *cf. Raia*, __ F.3d __, 2020 WL 1647922, at *2 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

### C. The Court Will Defer Any Ruling on Saillant's Immigration and Nationality Act Claim

In his habeas corpus petition, Saillant includes one sentence in which he argues that he is detained under 8 U.S.C. § 1226(c) and that his continued detention under that statute has become unreasonably prolonged under the Due Process Clause of the Constitution. (*See* Doc. 1 at 17.) Saillant does not develop this argument beyond that sentence. (*See id.*) The Respondents argue that Saillant's detention is governed by a different provision of the Immigration and Nationality Act, 8 U.S.C. § 1231, and that his detention under that statute is constitutional. (*See* Doc. 3 at 28–30.)

Because Saillant is unrepresented in this case, the court will liberally construe his petition as raising an argument that his continued detention has become unconstitutionally prolonged. *See Sause v. Bauer*, __ U.S. __, 138 S. Ct. 2561, 2563 (2018) (noting that district court must liberally construe filings from unrepresented litigants). Given the undeveloped state of the argument, however,

the court will defer ruling on this argument and give Saillant an opportunity to either develop the argument or voluntarily withdraw it. Accordingly, the court will provide a briefing schedule regarding this argument in the order that accompanies this memorandum. Saillant's failure to file a brief as required by the briefing schedule shall be construed as a voluntary withdrawal of the argument.

## Conclusion

For the foregoing reasons, Saillant's petition for writ of habeas corpus is denied to the extent that it seeks habeas corpus relief based on the COVID-19 pandemic.[2]  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: April 16, 2020

---

[2] The court recognizes that the circumstances surrounding the COVID-19 pandemic can change rapidly. Accordingly, although the instant petition is denied, the denial is without prejudice to Saillant filing a renewed petition for writ of habeas corpus if his individual circumstances change with respect to the pandemic.